## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DENISE M. MARUSCO GODFREY** | : | |
| **AND BYRON J. GODFREY,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 15-6477** |
| | : | |
| **UPLAND BOROUGH,** *et al.,* | : | |
| **Defendants.** | : | |

### Memorandum Opinion

**Rufe, J.**                                                                                **March 29, 2017**

Before the Court are a slew of motions concerning the Second Amended Complaint of

Plaintiffs Denise M. Marusco Godfrey and Byron J. Godfrey.  The allegations underlying this

case are fairly straightforward:  Plaintiffs, husband and wife, are property owners who claim that

a sewage line was surreptitiously installed on their property and destroyed its value, and they

seek to recover for that loss.  But pleading who should be held liable under what theories has

proved elusive for Plaintiffs, and so the Court is confronted, as it was with the First Amended

Complaint, with a series of motions by Defendants (seeking dismissal, among other things) and a

request by Plaintiffs to amend their complaint.  For the reasons set forth below, Defendants'

motions are granted in part and denied in part, and Plaintiffs will be given a final opportunity to

amend their complaint.

### I.   BACKGROUND

#### A.  Underlying Facts

The Court previously described Plaintiffs' Amended Complaint as follows:

Plaintiffs . . . allege that Defendants Catania Engineering Associates, Inc.
("Catania"), Delaware County Regional Water Control Authority ("DELCORA"),
and Upland Borough ("Upland") conspired to obtain an illegal easement and
install water control infrastructure on Plaintiffs' property, causing severe damage
to the premises.  Plaintiffs also allege that Defendants engaged in fraud to conceal

the cause of the damage, and retaliated against Plaintiffs when Plaintiffs discovered the easement and sought redress.[1]

The allegations in Plaintiffs' Second Amended Complaint are substantially similar.[2] Beginning in 2010, Plaintiffs lived in a house in Upland Borough, Delaware County, which was transferred to them in 2013 by Mrs. Godfrey's sister, Deana L. Marusco, who had owned the property since 1990.[3] Unbeknownst to Plaintiffs or Ms. Marusco, DELCORA had obtained an easement to install and use water control infrastructure on the property in 1991; the easement bore the seal of "Charles J. Catania," then-owner of Defendant Catania, as well as what appeared to be Ms. Marusco's signature.[4] Plaintiffs allege that this was a fraud, and that Ms. Marusco's signature was forged by DELCORA or Catania.[5]

After obtaining the easement, DELCORA and Upland Borough installed storm and sewage-water systems on the property, resulting in high water pressure and flooding.[6] The flooding was manageable until 2004 or 2005, when a plumber broke a valve in the basement and municipal sewage began to flow onto the premises in greater volumes.[7] By the time Plaintiffs moved to the property in 2010, the problems were more severe—the road in front of the premises had been damaged, and on August 14, 2011, "water gushed like a fountain from manholes" in

---

[1] Doc. No. 33 (Sept. 13, 2016 Order) at 1.

[2] The allegations in the Second Amended Complaint, Doc. No. 34, are taken as true for the purposes of this motion. That said, all of Plaintiffs' complaints have suffered from an organizational structure that lacks coherence as well as numerous typographical errors. Much of the confusion surrounding Plaintiffs' claims stems from these flaws, which are particularly glaring given that Plaintiffs have had repeated opportunities to amend their complaint.

[3] Elsewhere, Plaintiffs suggest that the transfer occurred in 2012. *E.g.*, *id.* ¶ 102 ("[Mrs. Godfrey] has only been a grantee, on June 20, 2012.").

[4] *Id.* ¶ 16.

[5] *Id.* ¶¶ 17-18.

[6] *Id.* ¶ 29.

[7] *Id.* ¶¶ 22-27.

front of the house.[8]  On October 1, 2011, Mr. Godfrey complained about the issue at an Upland

Borough Council meeting, but was removed from the podium after a few minutes.[9]

June 2013 marked a turning point for the worse.  Another flooding incident occurred,

during which "over 12 shop vacs" of storm water and sewage water flooded the premises.[10]

Plaintiffs made increasing efforts to address the problems, including contacting Mr. Catania and

Edward Mitchell, the Upland Borough Council President, to no avail.[11]  Upland's response was a

letter to Mrs. Godfrey stating that the problem was caused by a crack in the lateral sewer line on

the premises and requiring her to obtain a certification that the sewer line was in working

order.[12]

This, Plaintiffs allege, was a ruse:  Defendants knew the problems were caused by the

infrastructure they had installed and not by a crack in Plaintiffs' own sewer line, but they

maintained that Plaintiffs were to blame in order to cover up their own misdeeds, and they

undertook an increasingly nefarious campaign of retaliation against Plaintiffs for attempting to

hold them accountable.[13]  This culminated with Upland Borough bringing charges against Mrs.

Godfrey in October 2013, for failing to obtain a "Certificate of Lateral" for the premises under

Upland Borough Ordinance § 150—charges that Plaintiffs allege were baseless, as that ordinance

only applies to buyers and sellers of property, not to grantees such as Mrs. Godfrey.[14]  After a

year of on-and-off proceedings, Mrs. Godfrey was found not guilty.[15]

---

[8] *Id.* ¶¶ 28-30.

[9] *Id.* ¶ 44.

[10] *Id.* ¶ 32.

[11] *Id.*

[12] *Id.* ¶ 34.

[13] *Id.* ¶ 82.

[14] *Id.* ¶¶ 40-41.

[15] *Id.* ¶ 42.

Meanwhile, the problems worsened.  There were more fountainous outbursts of sewer water, the property continued to suffer damage, and a veritable revolving door of experts confirmed that the issues were caused by the water-control infrastructure installed by Defendants and could not be resolved while it remained in place.[16]  After more futile attempts by the Godfreys to get Upland Borough to address the problems—including one incident in which the Upland Borough Council adjourned a meeting early to avoid giving Mrs. Godfrey a platform to air her grievances—Upland Borough condemned the property, leaving Plaintiffs with a valueless, sewage-logged house that they could not sell or live in.[17]

### B.  Procedural History

Plaintiffs filed suit and, after amending their complaint, asserted five claims:  (1) First Amendment retaliation against Upland Borough; (2) fraud against all Defendants; (3) malicious prosecution against Upland Borough; (4) violation of the Fourteenth Amendment's Due Process Clause against all Defendants; and (5) a citizen suit under the Clean Water Act ("CWA") against DELCORA.[18]  Not all of these claims survived the first round of briefing.  The Court dismissed the fraud and malicious prosecution claims against Upland Borough, because, as a municipality, Upland Borough could not be held liable for intentional torts under Pennsylvania law.  The Court also dismissed the CWA claim against DELCORA as barred by a consent decree between DELCORA, the Environmental Protection Agency ("EPA"), and the Pennsylvania Department of Environmental Protection ("PADEP").[19]  The Court allowed Plaintiffs to proceed with the remainder of their claims and ordered them to file a Second Amended Complaint.[20]

---

[16] *Id.* ¶¶ 35-36.

[17] *Id.* ¶¶ 65, 72.

[18] Doc. No. 20 (Plaintiffs' Motion for Leave to File Second Amended Complaint).

[19] Doc. No. 33 at 5-6.

[20] *Id.* at 7-8.

In the Second Amended Complaint, Plaintiffs attempted to remedy the defects in their fraud, malicious prosecution, and CWA claims.  To that end, Plaintiffs named five individual employees or officials of Upland Borough, rather than the Borough itself, as Defendants for their fraud and malicious prosecution claims:  Thomas Kennedy, Parker Ferguson, Leyland Hunter, Edward Mitchell, and Robert O'Connor.  In an attempt to revive their CWA claim, Plaintiffs also alleged that the consent decree did not adequately address the CWA violations for which they sought redress.

The Upland Defendants (the municipality and its individual officers and employees) then moved to dismiss and for a more definite statement under Federal Rule of Civil Procedure 12(e).  DELCORA also moved to dismiss.[21]  Catania filed only a motion to strike Plaintiffs' request for counsel fees in association with their fraud claim, and as Plaintiffs have agreed not to seek such fees, that motion will be dismissed as moot.[22]

In response, Plaintiffs again sought leave to amend their complaint to address Defendants' arguments, and attached a proposed Third Amended Complaint to their motion.[23]  Plaintiffs also asked the Court to issue a sweeping order prohibiting Defendants from filing "any more motions to dismiss or to strike."[24]  DELCORA opposed Plaintiffs' motion to amend; Catania did not, but took issue with Plaintiffs' request that Defendants be barred from moving to dismiss or to strike; and the Upland Defendants did not respond.

---

[21] Doc. No. 41 (DELCORA's Motion to Dismiss).

[22] Doc. No. 38 (Catania's Motion to Strike); Doc. No. 45 (Plaintiffs' Response to Motion to Strike).  In their response, Plaintiffs clarified that they would add Catania Engineering Associates as a Defendant in their Due Process claim and seek counsel fees in connection with that claim, but not their fraud claim.  Doc. No. 45 at 1.  Catania did not object, Doc. No. 48-3 (Catania's Response to Plaintiffs' Motion for Leave to File a Third Amended Complaint), and so Plaintiffs' request is granted as unopposed.

[23] As explained, Plaintiffs will be required to file a new Third Amended Complaint that complies with this opinion.  Thus, although references will be made to the Third Amended Complaint for purposes of determining whether further amendment would be futile, the Third Amended Complaint, as currently filed, is not Plaintiffs' operative pleading.

[24] Doc. No. 44 (Plaintiffs' Motion to File Third Amended Complaint) at 1.  This request will be denied.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  "Motions for a more definitive statement are generally disfavored, and are used to provide remedies for unintelligible pleadings rather than as correction for lack of detail."[25]  "Rule 12(e) is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."[26]  "When presented with an appropriate Rule 12(e) motion . . . the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief."[27]

Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[28]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[29]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[30]  Something more than a mere *possibility* of a claim must be alleged; a plaintiff

---

[25] *Stoneback v. ArtsQuest*, Civil Action No. 12-3286, 2012 WL 4963624, at *10 (E.D. Pa. Oct. 17, 2012) (quoting *Frazier v. SEPTA*, 868 F. Supp. 757, 763 (E.D. Pa. 1994)) (alterations and internal quotation marks omitted).

[26] *Id.* (quoting *Schaedler v. Reading Eagle Publ'n, Inc*., 370 F.2d 795, 798 (3d Cir. 1967)).

[27] *Thomas v. Independence Twp*., 463 F.3d 285, 301 (3d Cir. 2006).

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[29] *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll*., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[30] *Twombly*, 550 U.S. at 555, 564.

must allege "enough facts to state a claim to relief that is plausible on its face."[31] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[32]

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend the complaint should be "freely give[n] when justice so requires." Amendment may be denied as futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted," and is "assessed using the same standard applied in the face of a motion to dismiss under Rule 12(b)(6)."[33]

## III.   ANALYSIS

### A.  The Upland Defendants' Motions

#### 1.   Motion for a More Definite Statement

The Upland Defendants move for a more definite statement, arguing that the Second Amended Complaint fails to identify the Defendants against which each cause of action is brought, and ask that the Court order Plaintiffs "to specifically address this issue to avoid any confusion."[34] This request will be denied. The core facts underlying Plaintiffs' claims are more or less comprehensible despite their haphazard presentation, and the *ad damnum* clause for each claim lists the Defendants against which that claim is brought. That is sufficient to pass Rule 12(e)'s low bar.[35] To resolve any lingering confusion regarding Plaintiffs' causes of action, only

---

[31] *Id.* at 570.

[32] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[33] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

[34] Doc. No. 37-1 (Upland Defendants' Memorandum of Law in Support of Motion to Dismiss and/or for a More Specific Pleading) at 10-12.

[35] *See Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 372 (E.D. Pa. 2011) (denying motion for more definite statement because defendant was able to identify

Defendants named in the *ad damnum* clause following each claim in the Third Amended

Complaint will be required to respond to that claim.

### 2.  Motion to Dismiss

The Upland Defendants also move to dismiss Plaintiffs' fraud and malicious prosecution

claims for failure to state a claim.[36]

### a.  Fraud

The individual Upland Defendants argue that Plaintiffs fail to allege the elements of a

fraud claim under Pennsylvania law, which are:  "(1) a misrepresentation, (2) material to the

transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable

reliance resulted, and (6) an injury proximately caused by the reliance."[37]  Defendants reason as

follows:  the only misrepresentation Plaintiffs identify is the 1991 fraudulent easement, and

Plaintiffs have not alleged that any individual Upland Defendants helped obtain the easement;

thus, none of them made a material misrepresentation that Plaintiffs relied upon, and they cannot

be held liable for fraud.  That argument is compelling insofar as it relates to the 1991 easement,

as Plaintiffs do not allege that any of the individual Upland Defendants were involved in its

procurement.

However, Plaintiffs allege that "[t]here were [two] frauds"—the first being the forged

easement, and the second being the "attempts to convince Plaintiffs . . . that the sewage water

and storm water on their premises was the fault of the laterals or other pipes," when in reality it

---

separate claims in complaint, and complaint was thus not "so vague or ambiguous" that defendant could not respond).

[36] Plaintiffs no longer appear to assert a Due Process claim against any of the Upland Defendants.  Defendants also argue that, to the extent Plaintiffs assert either a Due Process or First Amendment retaliation claim against the individual Upland Defendants, it would be barred by the doctrine of qualified immunity.  Doc. No. 37-1 at 17-21. However, Plaintiffs do not appear to assert these claims against the individual Upland Defendants, so the Court need not resolve this argument.

[37] *Fox Int'l Relations v. Fiserv Secs., Inc.*, 490 F. Supp. 2d 590, 606-07 (E.D. Pa. 2007) (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005)).

was due to the infrastructure installed by Defendants.[38]  In other words, Defendants allegedly

defrauded Plaintiffs by misleading them as to the source of the problems, which prevented

Plaintiffs from addressing the true cause of the flooding and caused Plaintiffs to incur out-of-

pocket losses as they paid experts to examine and attempt to repair their sewer line.  These

allegations differ somewhat from a run-of-the-mill fraud claim, but they establish the elements of

fraud, including a misrepresentation, reasonable reliance, and damages.  Plaintiffs' fraud claim is

not, at this stage, barred as a matter of law against any Upland Defendant.[39]

The Court must also determine whether Plaintiffs have stated a fraud claim against the

individual Upland Defendants,[40] who argue that Plaintiffs' fraud allegations against them violate

Rule 9(b)'s requirement that fraud be pleaded with particularity.[41]  "To satisfy [Rule 9(b)], the

plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject

precision or some measure of substantiation into a fraud allegation."[42]

### i.   Thomas Kennedy

Plaintiffs allege that Mr. Kennedy is a plumber for Upland Borough, and that he played a

central role in a scheme to defraud Plaintiffs by representing on several specific dates that

Plaintiffs' problems were caused by a crack in their sewer line despite his knowledge to the

---

[38] Doc. No. 46 (Plaintiffs' Response to the Upland Defendants' Motion to Dismiss) at 7.

[39] The Upland Defendants also argue that to the extent Plaintiffs seek to assert a claim for civil conspiracy, they cannot do so, because the individual Upland Defendants are agents of Upland Borough, and thus are legally incapable of conspiring with it.  Doc. No. 37-1 at 15-16.  But Plaintiffs do not assert a standalone conspiracy claim, and to the extent the Second Amended Complaint alleges conspiratorial conduct, it appears to refer to a conspiracy between the Upland Defendants, Catania, and DELCORA, not an internal conspiracy within Upland Borough.

[40] The Upland Defendants couch their Rule 9(b) arguments as part of their motion for a more definite statement, but to streamline this case, the Court will treat their arguments as a motion to dismiss.  *See Machesky v. Hawfield*, Civil Action No. 07-9, 2008 WL 614819, at *4 (W.D. Pa. Mar. 4, 2008) (treating motion for a more definite statement as a motion to dismiss in order to streamline case).

[41] Doc. No. 37-1 at 10-11.  Plaintiffs have agreed not to assert a fraud claim against Mr. O'Connor, an attorney for Upland Borough, in the new Third Amended Complaint, and the fraud claim against him will be dismissed.  Doc. No. 46 at 6 ("Plaintiffs have agreed not to name O'Connor in the Third Amended Complaint.").

[42] *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, Avandia MDL No. 1871, 2013 WL 5761202, at *8 (E.D. Pa. Oct. 23, 2013) (citations and internal quotation marks omitted).

contrary.[43]  Plaintiffs also claim that Mr. Kennedy had pictures showing the alleged crack (which would have tended to prove or disprove that the crack indeed existed), and that he refused to turn them over to Plaintiffs.[44]  These allegations are sufficient to state a fraud claim against Mr. Kennedy, as they identify his role in the scheme and the details of his involvement.

### ii.    Parker Ferguson

Plaintiffs allege that Mr. Ferguson is a building inspector for Upland Borough, and that he conspired with Mr. Kennedy and the rest of the Upland Defendants to defraud Plaintiffs regarding the cause of the flooding.[45]  Although this scheme may be plausible, Plaintiffs' Second Amended Complaint is bereft of details regarding Mr. Ferguson's involvement in it.  Unlike Mr. Kennedy, Plaintiffs have not provided any specific information regarding Mr. Ferguson's misconduct, aside from the vague allegation that he "tried to convince Plaintiffs the problem was on their property, not outside it."[46]  Plaintiffs must provide more particulars regarding Mr. Ferguson if he is to remain in the case, and the fraud claim against him will be dismissed without prejudice.

### iii.    Edward Mitchell

Plaintiffs allege that Mr. Mitchell was the president of the Upland Borough Council, and that he too was part of the conspiracy to defraud Plaintiffs.[47]  Mr. Mitchell is in the same boat as Mr. Ferguson—his involvement in the scheme is plausible, but there are too few details in the Second Amended Complaint to sustain a fraud claim against him.  The fraud claim against Mr.

---

[43] Doc. No. 34 ¶¶ 5, 32, 37, 52.

[44] *Id.* ¶¶ 39, 50.

[45] *Id.* ¶¶ 7, 45.

[46] *Id.* ¶¶ 45, 76.  The details that Plaintiffs do provide about Mr. Ferguson are not sufficient to implicate him in the alleged fraudulent scheme.  For example, Plaintiffs allege that they complained to Mr. Ferguson about the problems on their property on certain dates, *see id.* ¶ 32, but do not provide any information about how Mr. Ferguson misled them.

[47] *Id.* ¶¶ 8, 32.

Mitchell will also be dismissed without prejudice.

### iv.  Leyland Hunter

Plaintiffs allege that Mr. Hunter was a council member for Upland Borough, and that his signature appeared on an orange sign that was placed on Plaintiffs' premises in 2014 and stated that their house was unfit for occupancy.[48]  That is not enough to sustain a fraud claim, as it does not show that Mr. Hunter misled Plaintiffs in any way.  The other allegations against Mr. Hunter, like those against Mr. Mitchell and Mr. Parker, are vague and conclusory.  The fraud claim against Mr. Hunter will also be dismissed without prejudice.

### b.  Malicious Prosecution

Plaintiffs assert a state-law malicious prosecution claim against the individual Upland Defendants based on Mrs. Godfrey's prosecution under a Borough ordinance for failure to obtain a Certificate of Lateral.[49]  Under Pennsylvania law, a malicious prosecution claim requires:  "(1) the institution of legal proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) the proceedings terminated in favor of the plaintiff."[50]

Defendants assert that this claim fails because the charges against Mrs. Godfrey were not criminal in nature, but the ordinance under which they were brought suggests that they were. Upland Borough Ordinance § 150 provides that violations will be punished by fines, and that a violator who fails to pay any such fine will "be sentenced to imprisonment for a term not to exceed 30 days."[51]  That makes the ordinance a "Penal Law" under the Pennsylvania Rules of

---

[48] *Id.* ¶¶ 9, 65.

[49] After some back and forth between the parties, Plaintiffs clarified that this claim was brought *only* by Mrs. Godfrey, as the charges were brought against her and not Mr. Godfrey.  For consistency's sake, the Court nonetheless refers to "Plaintiffs" in the plural throughout this subsection.

[50] *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 357-58 (E.D. Pa. 2012) (citations and internal quotation marks omitted).

[51] Upland Borough Ordinance § 150-5(B).

Criminal Procedure, which in turn renders a proceeding to enforce the ordinance a "Criminal Proceeding."[52]   And although Plaintiffs do not address Defendants' argument, they have consistently alleged that Mrs. Godfrey was "prosecuted" and ultimately found "not guilty of all charges," which suggests a criminal proceeding.[53]   In the absence of any compelling argument regarding why the proceedings should be treated as civil, rather than criminal, Plaintiffs may proceed with their malicious prosecution claim.

Defendants also argue that because only Mr. Hunter signed the citation, the malicious prosecution claim should be dismissed against the other Defendants.   However, "[l]iability for malicious prosecution can also attach when [a] defendant influences a third party to initiate the proceedings."[54]   Here, Plaintiffs allege that the individual Upland Defendants all worked together to gin up the baseless charges against Mrs. Godfrey, which is sufficient to establish a malicious prosecution claim against the individual Upland Defendants.   The motion to dismiss will be denied as to this claim.

### B.  DELCORA's Motion to Dismiss

DELCORA argues:  (1) that Plaintiffs' fraud claim should be dismissed as barred by the Pennsylvania Tort Claims Act and Plaintiffs should not be granted leave to amend to add as Defendants individual employees and officers of DELCORA who would not be protected by that statute; (2) that the Court lacks jurisdiction over Plaintiffs' Due Process claim under the *Younger* abstention doctrine; and (3) that Plaintiffs' CWA claim is barred by a consent decree.

### 1.  Fraud Claim

In its motion to dismiss the Second Amended Complaint, DELCORA argued that

---

[52] Pa. R. Crim. P. 103.

[53] Doc. No. 34 ¶¶ 42, 108.

[54] *Dayoub v. Aaron*, Civil Action No. 2:12-1770, 2013 WL 4810382, at *8 (W.D. Pa. Sept. 9, 2013) (citations omitted).

Plaintiffs' fraud claim is barred by the Pennsylvania Tort Claims Act, which provides municipal authorities with immunity for intentional torts.[55]  In response, Plaintiffs jettisoned their fraud claim against DELCORA and now seek to amend their complaint to add a fraud claim against three DELCORA employees:  Joseph Centrone, Robert A. Powell, and John Sucher.  DELCORA, Mr. Centrone, Mr. Powell, and Mr. Sucher all oppose this amendment as untimely.  Because there is no dispute that the statute of limitations expired before Plaintiffs sought to add the three individual DELCORA Defendants, the primary issue is whether the new fraud claim against them relates back to Plaintiffs' original, timely Complaint.[56]  The individual DELCORA Defendants also argue that even if the claim against them is not time-barred, Pennsylvania law provides them with immunity from Plaintiffs' fraud claim.

### a.  Relation Back

Plaintiffs' fraud claim would be time-barred under Pennsylvania law, which "does not permit a plaintiff to add a new party after the expiration of the applicable statute of limitations."[57]  Defendants argue that this dooms Plaintiffs' claim, reasoning that because the Court exercises supplemental jurisdiction over Plaintiffs' state-law fraud claim, the Court must apply Pennsylvania law to determine whether relation back is appropriate.[58]  That is incorrect.  "As the Third Circuit has explained . . . the question of relation back is procedural and therefore

---

[55] *See* 42 Pa. C.S. § 8542(a)(2); *see also Zernhelt v. Lehigh Cty. Officer of Children and Youth Servs.*, 659 A.2d. 89, 90 (Pa. Commw. Ct. 1995).

[56] As explained in the Court's September 13, 2016 Order, Plaintiffs first filed their complaint on the last day before the statute of limitations expired, rendering any amendments untimely and therefore permissible only to the extent they relate back to Plaintiffs' original complaint.  Doc. No. 33 at 4.

[57] *Childs v. City of Philadelphia*, Civil Action No. 99-615, 2000 WL 567240, at *2 (E.D. Pa. May 9, 2000) (citation and internal quotation marks omitted).

[58] Doc. No. 49 (DELCORA's Response in Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint) at 10.

properly analyzed according to federal practice."[59]   The Federal Rules of Civil Procedure thus govern the Court's analysis.

Federal Rule of Civil Procedure 15(c)(1) provides that an amended pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [90 days], the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, Rule 15(c)(1)(A) does not apply because Pennsylvania law does not allow relation back under these circumstances, and Rule 15(c)(1)(B) alone does not allow relation back because Plaintiffs seek to add new parties, rather than new claims.  Plaintiffs must therefore satisfy Rule 15(c)(1)(C)'s three conditions:  (1) that the claim against the individual DELCORA Defendants arose out of the conduct, transaction, or occurrence set out in the original complaint; (2) that they received notice of the claim within 90 days after the complaint was filed such that they will not be prejudiced in defending against it on the merits; and (3) that they knew or should have known that the claim would have been brought against them (again, within 90 days) "but for a mistake

---

[59] *See In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2436, 2015 WL 7075812, at *9 (E.D. Pa. 2015) (quoting *Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014 n.5 (3d Cir. 1995)) (internal citation and quotation marks omitted); *see also Patraka v. Armco Steel Co.*, 495 F. Supp. 1013, 1016 (M.D. Pa. 1980) (allowing relation back where amended complaint added new party even though Pennsylvania law would have barred the claim).

concerning" their identity.[60]   All three conditions are satisfied.

The first condition is satisfied because the new fraud claim against the individual DELCORA Defendants arises out of the same alleged misconduct as its predecessor.  As to the second condition (notice), Plaintiffs argue that Mr. Powell and Mr. Centrone received actual notice of the claim against them when the Complaint was served on DELCORA, and that Mr. Sucher received constructive notice because he was mentioned in the complaint, although not named as a Defendant.  DELCORA does not dispute that either of these conditions is met, and instead focuses only on Rule 15's "mistake" requirement, arguing that Plaintiffs omitted the individual DELCORA Defendants from the prior complaints as part of a "deliberate legal strategy, not merely an error."[61]

The record does not bear this out.  Although Plaintiffs asserted a fraud claim against DELCORA in every version of their complaint, DELCORA waited until Plaintiffs filed the Second Amended Complaint to raise its immunity argument, which prompted Plaintiffs to assert a fraud claim against the individual DELCORA Defendants (who were mentioned, although not named as Defendants, in prior complaints).  Nothing about this suggests that Plaintiffs neglected to assert a fraud claim against the individual DELCORA Defendants as part of a "legal strategy"; rather, it appears that Plaintiffs previously named DELCORA as a Defendant because they were under the mistaken belief that it *was* the proper Defendant until DELCORA argued otherwise—a legal "mistake" that justifies relation back under Rule 15(c)(1)(C)(ii).[62]  Under these

---

[60] Fed. R. Civ. P. 15(c)(1)(C); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001).

[61] Doc. No. 49 at 12.

[62] *E.g.*, *Allen v. Nat'l R.R. Passenger Corp., (Amtrak)*, Civil Action No. 03-CV-3497, 2004 WL 2830629, at *9 (E.D. Pa. Dec. 7, 2004) ("It is well-settled that a 'mistake' within the meaning of Rule 15(c)(3)(B) includes erroneous judgments of law and fact."); *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1457 (E.D. Pa. 1992) (amended counterclaim against individual employees, rather than corporation, related back where plaintiff had failed to include individual employees in previous complaints due to a legal mistake); *see also Woods v.*

circumstances, it is reasonable to conclude that the individual DELCORA Defendants—who do not dispute that they received notice of the original complaint—should have known within 90 days of its filing that they would have been named if not for Plaintiffs' confusion regarding the scope of DELCORA's municipal liability.  The third and final condition for relation back under Rule 15(c)(1)(C) is satisfied.

The DELCORA Defendants also argue that Rule 15(c)(1)(C) "was not intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor to permit a plaintiff to engage in piecemeal litigation."[63]  But as the Supreme Court has explained, Plaintiffs' dilatory conduct cannot justify denial of leave to amend under Rule 15(c)(1)(C), which mandates relation back when its three conditions are met and leaves no room for extraneous equitable considerations.[64]  Because Plaintiffs have satisfied these three conditions, relation back is appropriate, and Plaintiffs may assert fraud claims against the individual DELCORA Defendants.

### b.  Immunity

The individual DELCORA Defendants also argue that amendment would be futile because the Pennsylvania Tort Claims Act provides them with immunity for fraud claims.[65] However, that statute  "does not confer immunity" in any action against an employee of a government agency "in which it is judicially determined that the act of the employee caused the

---

*Indiana Univ.-Purdue Univ. at Indianapolis,* 996 F.2d 880, 887 (7th Cir.1993) (counsel's "legal blunder" in pursuing state agencies rather than individuals constituted a "mistake" warranting relation back under Rule 15).

[63] Doc. No. 49 at 11.

[64] *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553-54 (2010) ("The Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them.  Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion.").

[65] Doc. No. 49 at 9-10.

injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."[66] "For the purposes of the Tort Claims Act, willful misconduct has the same meaning as the term intentional tort."[67]  Because Plaintiffs allege that the individual DELCORA Defendants committed fraud, an intentional tort, the individual DELCORA Defendants are not entitled to immunity and leave to amend would not be futile.[68]

### 2.  Due Process Claim

DELCORA argues that the Court should abstain from exercising jurisdiction over Plaintiffs' Due Process claim based on the *Younger* doctrine.[69]  DELCORA reasons that because Plaintiffs are also pursuing an inverse-condemnation action in the Delaware County Court of Common Pleas seeking compensation for the alleged taking of their property, this Court should decline to exercise jurisdiction over Plaintiffs' Due Process claim to avoid interfering with the state-court proceeding.

"[F]ederal courts have a 'virtually unflagging' obligation to hear and decide cases within their jurisdiction."[70]  "Abstention under the *Younger* line of cases overcomes this principle only when federal litigation threatens to interfere with one of three classes of cases:  (1) state criminal prosecutions, (2) state civil enforcement proceedings, and (3) state civil proceedings involving

---

[66] *Raven v. City of Philadelphia*, Civil Action No. 15-4146, 2016 WL 320574, at *7 (E.D. Pa. Jan. 26, 2016) (quoting 42 Pa. Cons. Stat. § 8550).

[67] *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (internal quotation marks omitted).

[68] *E.g.*, *Fox Fuel, a Div. of Keroscene, Inc. v. Del. Cty. Schs. Joint Purchasing Bd.*, 856 F. Supp. 945 (E.D. Pa. 1994) (denying motion to dismiss based on official immunity where plaintiff alleged defendants intentionally made fraudulent misrepresentations).

The individual DELCORA Defendants also argue that immunity cannot be abrogated because no "judicial determination" has yet been made that Defendants engaged in actual fraud or willful misconduct.  That argument is premature; no "judicial determination" of liability has been made because this case is still at the pleading stage, so this argument does not provide a basis for dismissal.

[69] *See Younger v. Harris*, 401 U.S. 37 (1971).

[70] *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (quoting *Sprint Commc'ns v. Jacobs*, 134 S. Ct. 584, 591 (2013)).

orders in furtherance of the state courts' judicial function."[71]  If a case falls into one of these three exceptional categories, it must satisfy three additional requirements for abstention:  that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims."[72]

DELCORA has failed to show that this case falls into one of the three narrow categories suitable for *Younger* abstention.  The state-court inverse condemnation proceeding certainly is not a criminal prosecution or a civil enforcement proceeding.  And the third category of abstention-worthy disputes has been applied only to a few exceptional types of cases far afield of this one, such as child custody proceedings, civil contempt orders, and requirements for posting bonds pending appeal.[73]  On the other hand, disputes touching on a state's land use policies, such as the inverse-condemnation action here, although doubtless related to important state interests, do not necessarily warrant abstention.[74]

Even if this dispute fit into a category warranting abstention, the Court would not decline to exercise jurisdiction, as DELCORA has not identified any way in which Plaintiffs' federal

---

[71] *Id.* In support of their *Younger* arguments, the parties rely on decisions that pre-date the Supreme Court's 2013 opinion in *Sprint*, which forcefully reiterated that *Younger* abstention is the exception, not the rule, and is appropriate only in these three narrow circumstances.

[72] *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger*, 401 U.S. 37); *see also Sprint*, 134 S. Ct. at 593 (explaining that these factors "are not dispositive" but are, "instead, additional factors appropriately considered by the federal court before invoking *Younger*") (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).

[73] *See Obuskovic v. Wood*, Civil Action No. 15-7520 (MAS) (TJB), 2016 WL 6471023, at *5 (E.D. Pa. Oct. 31, 2016) ("The third category relating to the 'state courts' ability to perform their judicial functions' has only been applied to civil contempt orders and requirements for posting bonds pending appeal.") (citing *Sprint*, 134 S. Ct. at 588); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 627-28 (E.D. Pa. 2014) (child custody proceedings qualify for *Younger* abstention).

[74] *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1203 (3d Cir. 1992) (explaining that "district courts [should] not to dismiss claims hastily merely because they may involve land use issues" and concluding that claims alleging that defendants maliciously applied local land-use ordinances to deprive plaintiff of federal rights did not warrant *Younger* abstention).

claim would interfere with the state-court inverse condemnation proceeding.  Here, Plaintiffs

seek damages for an alleged conspiracy to violate their Due Process rights by obtaining and

covering up an easement that destroyed the value of their property; they do not seek to invalidate

any local ordinance or enjoin any state-court proceeding.  Absent any articulation as to why

federal jurisdiction would *interfere* with the state-court action, rather than merely parallel it,

abstention is not appropriate.[75]

### 3.   Clean Water Act Claim

Lastly, DELCORA argues that Plaintiffs' CWA claim is precluded by a November 15,

2015 consent decree between DELCORA, the EPA, and the PADEP.  The Court previously

concluded that the consent decree precluded Plaintiffs' CWA claim based on the CWA's

"diligent prosecution" bar, but granted Plaintiffs leave to supplement their allegations.[76]

Because Plaintiffs' additional allegations do not cure the previous deficiencies, this claim will be

dismissed with prejudice.

The CWA authorizes citizen suits, but "conditions the right to sue on the absence of

diligent prosecution of violations by the EPA Administrator or the State."[77]  "Under

§ 1365(b)(1)(B) [of the CWA] a citizen cannot bring a private action to enjoin violations of the

CWA 'if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal

---

[75] *Addiction Specialists,* 411 F.3d at 409 ("[T]he mere fact that the factual background of a case arose out of a land use dispute is not enough to say that the federal proceeding would interfere with state proceedings that involve important state interests for *Younger* abstention purposes.") (citation omitted).

[76] Plaintiffs did not meaningfully address DELCORA's CWA arguments in their response to DELCORA's motion to dismiss, Doc. No. 47, and instead waited to do so until their reply in support of their motion for leave to file a Third Amended Complaint—a curious maneuver, as the CWA claim did not change between the Second and Third Amended Complaints.  Then, several days later, Plaintiffs filed their cryptically titled "Partially Unopposed Motion to Amend Clean Water Act Portion of Reply to Response of [DELCORA] to Motion for Leave to File Third Amended Complaint," Doc. No. 51, which contained a two-page, six-paragraph footnote in which Plaintiffs addressed the CWA claim in more detail and, for the first time, cited case law in support of their arguments.  That motion will be dismissed as moot.

[77] *Student Pub. Interest Research Grp. v. Fritzsche, Dodge & Olcott, Inc.*, 579 F. Supp. 1528, 1533 (D.N.J. 1984).

action in a court of the United States, or a State to require compliance with the standard,

limitation, or order.'"[78] "[T]he legislative history of the citizen suit provision of the Clean Water

Act suggests that 'the citizen suit is meant to supplement rather than to supplant governmental

action'"[79] and "that Congress wanted to avoid subjecting violators to dual enforcement actions

or penalties for the same violation."[80]  Accordingly, "Section 1365(b)(1)(B) does not require

government prosecution to be far-reaching or zealous.  It requires only diligence."[81]

DELCORA argues that the consent decree bars Plaintiffs' claim because it resulted from

a diligent prosecution by the EPA and the PADEP and addresses the same CWA violations

alleged in Plaintiffs' Second (and now Third) Amended Complaints.  There is no dispute that a

consent decree may evidence diligent prosecution and therefore bar a citizen suit under the

CWA, and Plaintiffs do not argue that the prosecution that led to the consent decree was

anything less than diligent.[82]  The issue thus becomes whether the consent decree requires

compliance with the same standard, limitation, or order sought by the complaint, and a review of

its terms shows that it does.

The consent decree requires DELCORA "to take the steps necessary to achieve full

compliance with the CWA" and its associated regulations, and to "come into and remain in full

---

[78] *Karr v. Hefner*, 475 F.3d 1192, 1196 (10th Cir. 2007) (citing 33 U.S.C. § 1365(b)(1)(B)).  The Third Circuit has held that a similar diligent prosecution bar in the Clean Air Act is a claims-processing rule, rather than a jurisdictional rule, and the Court thus evaluates this argument under Rule 12(b)(6) rather than Rule 12(b)(1).  *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 123-24 (3d Cir. 2016).

[79] *Shenango*, 810 F.3d at 130 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987)).

[80] *L.E.A.D. (Local Envtl. Awareness Dev.) v. Exide Corp.*, No. Civ. 96-3030, 1999 WL 124473, at *30 (E.D. Pa. Feb. 19, 1999) (citing S. Rep. No. 99–50, at 28 (1985)).

[81] *Karr*, 475 F.3d at 1197; *see also Ark. Wildlife Fed'n v. ICI Ams., Inc.*, 29 F.3d 376, 380 (8th Cir. 1994) (explaining that Congress intended citizen suits under the CWA "to play an 'interstitial,' rather than 'potentially intrusive' role, that such suits are proper only when the federal, state, or local agencies fail to exercise their enforcement responsibility, and that such suits should not considerably curtail the governing agency's discretion to act in the public interest") (quoting *Gwaltney*, 484 U.S. at 60-61).

[82] *Shenango*, 810 F.3d at 130 (finalized consent decree satisfied analogous diligent prosecution bar under the Clean Air Act).

compliance with the terms and conditions of [DELCORA's] NPDES Permit,[83] the Clean Water

Act, and the Clean Streams Law, including elimination of Sanitary Sewer Overflows."[84]

"Sanitary Sewer Overflow," is defined as an "overflow, spill, diversion, or release of wastewater

from or caused by the Sanitary Sewer System" and includes:  "(i) discharges . . . from the

Sanitary Sewer System and (ii) any release of wastewater from the Sanitary Sewer System to

public or private property . . . including Building/Private Property Backups."[85]  And

"Building/Private Property Backup" is defined as "a release of wastewater into a building or onto

private property that is caused by blockage(s), flow condition(s) or Collection System

malfunction(s)."[86]

This language makes clear that the consent decree requires DELCORA to eliminate

Sanitary Sewer Overflows, which include releases of wastewater into private property caused by

DELCORA's sewer lines—essentially the same CWA violation alleged in the complaint.

Indeed, the consent decree obligates DELCORA "to achieve full compliance with the CWA."

The consent decree thus requires compliance with the same standard sought by Plaintiffs and

bars their claim.[87]

Plaintiffs' arguments to the contrary are not persuasive.  First, Plaintiffs argue that the

consent decree is deficient because it does not cover problems caused by conditions in a private

---

[83] "NPDES" stands for National Pollutant Discharge Elimination System.  The CWA generally prohibits the discharge of pollutants except as authorized by a NPDES permit issued by the EPA or an authorized state.  Doc. No. 34 ¶ 114.

[84] *Id.*, Ex. 2 (Consent Decree) at 4.

[85] *Id.* at 9.

[86] *Id.* at 5.  "Collection System" is defined to include the "municipal wastewater collection and transmission system owned or operated by DELCORA, including all pipes, interceptors, force mains, gravity sewer lines, lift stations, pumping stations, manholes and appurtenances thereto designed to collect and convey municipal sewage and wastewaters.").  *Id.*

[87] *See U.S. EPA v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990) (citizen suit was barred by entry of consent decree).

lateral.  But Plaintiffs have alleged repeatedly that the problems on their property are *not* caused

by conditions in a private lateral, so this carve-out is irrelevant.[88]

Second, Plaintiffs assert that a lawyer for the Department of Justice told them that the

consent decree would not resolve their problems, but this is tantamount to a legal conclusion, and

is entitled to no weight on a motion to dismiss.  And even taken as true, this alleged statement

does not help Plaintiffs, as "an unsatisfactory result does not necessarily imply lack of

diligence," and so does not allow Plaintiffs to avoid the CWA's diligent prosecution bar.[89]

Finally, Plaintiffs argue that the consent decree is inadequate because it provides

DELCORA with a twenty-year timeline for compliance.[90]  However, the mere fact that the EPA

and the PADEP are not "moving with the alacrity [Plaintiffs] desire" does not entitle Plaintiffs to

pursue a citizen suit in the face of a consent decree.[91]  Plaintiffs' CWA claim will thus be

dismissed with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions are granted in part and denied in

part, and Plaintiffs will be granted leave to file a new Third Amended Complaint.  The Court

allows Plaintiffs to do so with some trepidation—this will be the fourth formal iteration of

Plaintiffs' complaint, and although Plaintiffs continue to refine their legal theories, the facts

---

[88] *E.g.*, Doc. No. 34 ¶ 37 ("every expert" Plaintiffs consulted told Plaintiffs there was no crack in Plaintiffs' lateral); ¶ 64 ("there was no defect in Plaintiff's lateral line"); ¶ 85 ("Plaintiffs had plumbers record videotapes of their lateral pipes which showed there were no defects"); ¶ 86 (Plaintiffs' lateral was "fine").  This is not merely a passing allegation; as discussed, a core premise of Plaintiffs' fraud claim is that Defendants misled Plaintiffs as to the cause of their flooding by telling them that the problems stemmed from their private lateral, rather than DELCORA and Upland's infrastructure.

[89] *Karr*, 475 F.3d at 1197 (citations omitted).

[90] Doc. No. 34, Ex. 2 at 24.  That is not entirely accurate—the consent decree requires DELCORA to adopt certain control measures "as soon as possible *but in no event later than twenty (20) years*" after its enactment, meaning that relief could arrive sooner.

[91] *N. & S. Rivers Watershed Ass'n v. Town of Scituate*, 949 F.2d 552, 558 (1st Cir. 1991).  *Cf. Shenango*, 810 F.3d at 132 (affirming dismissal of complaint alleging violations of the Clean Air Act because consent decree addressed plaintiff's contentions and rejecting plaintiff's argument that consent decree was inadequate).

underlying this dispute have remained relatively constant since day one.  The Federal Rules governing pleadings and amendments are liberal, but at some point this case must move forward. Future attempts by the parties to re-litigate the Court's previous rulings or to argue wholly new positions that could have been raised previously are discouraged.